1 | CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
2 | HUNTER HANEY (Bar No. 340445)
(E-Mail: hunter_haney@fd.org)
3 | Deputy Federal Public Defender
321 East 2nd Street
4 | Los Angeles, California 90012-4202
Telephone: (213) 894-2854
5 | Facsimile: (213) 894-0081

6 | Proposed Attorneys for Petitioner
LEON ABEL GONZALEZ
7

8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13 | LEON ABEL GONZALEZ,

14 |        Plaintiff,

15 |        v.

16 | JUAN HERRERA, Bureau of Prisons
Residential Reentry Manager for Long
17 | Beach, in his official capacity; and
COLLETTE PETERS, Director of the
18 | Federal Bureau of Prisons, in her official
capacity,
19
20 |        Respondent.

Case No. 23-cv-10554

**[Related Case: 2:14-cr-00684-CAS-33]**

**PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**EXPEDITED REVIEW REQUESTED**

21

22

23

24

25

26

27

28

Petitioner Leon Abel Gonzalez, through proposed counsel of record, respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petition is based upon the legal memorandum that follows, the exhibits appended thereto, including, but not limited to, the declaration of proposed counsel of record, and all docket entries in Mr. Gonzalez's underlying criminal case. A motion for appointment of counsel is concurrently filed herewith.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  December 18, 2023       By  */s/ Hunter Haney*
                                    HUNTER HANEY
                                    Deputy Federal Public Defender
                                    Proposed Attorneys for Leon Abel Gonzalez

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................1

II. JURISDICTION ...............................................................2

    A.   Parties .......................................................................2

    B.   Jurisdiction and Venue ...........................................3

III. BACKGROUND AND FACTUAL ALLEGATIONS ............................4

    A.   Mr. Gonzalez's Conviction and Sentence .....................4

    B.   Incarceration and Release on CARES Act Home Confinement.................4

    C.   The First Step Act Earned-Time-Credit Program .......................5

    D.   PATTERN Score ...................................................8

    E.   Mr. Gonzalez is Eligible for over 560 Earned Time Credits and is Overserving His Sentence. ...................9

    F.   Mr. Gonzalez Has Exhausted His Administrative Remedies. ..................10

IV. ARGUMENT.................................................................13

    A.   Mr. Gonzalez is Eligible to Earn and Redeem over 560 days' ETCs.........13

    B.   Mr. Gonzalez is Not Disqualified Based on His Conviction or Conduct..15

        1.   Mr. Gonzalez is not ineligible under 18 U.S.C. § 3632(d)(4)(D)(lviii) because he was not convicted of an offense for which death or serious bodily injury resulted from the controlled substance..................15

        2.   Mr. Gonzalez is also not made ineligible under 18 U.S.C. § 3632(d)(4)(D)(lxv) because this Court did not apply the two-level enhancement under U.S.S.G. § 3B1.1. ..................16

    C.   Mr. Gonzalez is Not At Risk of Re-Offending and Has Demonstrated Strong Community Ties Warranting the Soonest Possible Release from Restrictive Custody .................16

V. CONCLUSION .................................................................17

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Braden v. 30th Judicial Circuit County of Ky.*,
   410 U.S. 484 (1973)..................................................................................3

*Brodie v. Pliler*,
   1:22-cv-03821-LGS (S.D.N.Y. Sept. 23, 2022) ......................................7

*Brown v. United States*,
   610 F.2d 672 (9th Cir. 1980) ...................................................................3

*Cazares v. Hendrix*,
   575 F. Supp. 3d 1289 (D. Or. 2021) ......................................................12

*Dyer v. Fulgam*,
   No. 1:21-CV-299, 2022 WL 1598249 (E.D. Tenn. May 20, 2022)...................12, 14

*Jones v. Cunningham*,
   371 U.S. 236 (1963)..................................................................................2

*Jones v. Hendrix*,
   No. 21-857, -- S. Ct. -- (June 22, 2023)................................................13

*Lallave v. Martinez*,
   No. 22-CV-4136 (NGG), 2022 WL 7578794 (E.D.N.Y. Oct. 13, 2022).............2, 12

*Miller v. Sangiacomo*,
   No. 10-CV-169 (RJA), 2010 WL 3749065 (W.D.N.Y. Sept. 30, 2010)....................2

*Pinson v. Carvajal*,
   69 F.4th 1059 (9th Cir. 2023) ................................................................13

*Preiser v. Rodriguez*,
   411 U.S. 475, 500 (1973) .........................................................................3

*Robertson v. Butler*,
   No. 6:14-136-KKC, 2014 WL 7177936 (E.D. Ky. Dec. 16, 2014) ........13

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004)..................................................................................3

*Stewart v. Snider*,
   No. 1:22-cv-00294-MHH-JHE, 2022 WL 2032305 (N.D. Ala. May 10, 2022) ......................................................................................................7, 10

ii

# TABLE OF AUTHORITIES

Page(s)

*Yong v. Immigration & Naturalization Serv.*,
    208 F.3d 1116 (9th Cir. 2000) ..................................................................18

*Young v. Kenny*,
    907 F.2d 874 (9th Cir. 1989) ...................................................................3

**Statutes**

18 U.S.C. § 3624(b) ..................................................................................6

18 U.S.C. § 3624(g)(1) .........................................................................6, 10

18 U.S.C. § 3624(g)(2) ..............................................................................6

18 U.S.C. § 3624(g)(3) .........................................................................6, 10

18 U.S.C. § 3632(a)(3) ..............................................................................6

18 U.S.C. § 3632(a)(5) ..............................................................................6

18 U.S.C. § 3632(d)(4) ............................................................................10

18 U.S.C. § 3632(d)(4)(A) .......................................................................13

18 U.S.C. § 3632(d)(4)(A)(i) .................................................................5, 14

18 U.S.C. § 3632(d)(4)(A)(ii) .............................................................6, 9, 14

18 U.S.C. § 3632(d)(4)(C) .................................................................5, 6, 14

18 U.S.C. § 3632(d)(4)(D) ...................................................................6, 15

18 U.S.C. § 3632(d)(4)(D)(lviii) ...........................................................6, 15

18 U.S.C. § 3632(d)(4)(D)(lxv) .......................................................7, 15, 16

21 U.S.C. § 841(a) ....................................................................................6

21 U.S.C. § 841(a)(1) ................................................................................1

21 U.S.C. § 841(b) .............................................................................15, 16

21 U.S.C. § 841(b)(1)(B)(viii) ........................................................1, 4, 6, 7

21 U.S.C. § 846...................................................................................4, 6

# TABLE OF AUTHORITIES

Page(s)

28 U.S.C. § 1331 ................................................................................................ 3

28 U.S.C. § 1346 ................................................................................................ 3

28 U.S.C. § 1651 ................................................................................................ 3

28 U.S.C. § 2201 ................................................................................................ 3

28 U.S.C. § 2202 ................................................................................................ 3

28 U.S.C. § 2241 ........................................................................... 2, 3, 12, 13

28 U.S.C. § 2241(a) ........................................................................................... 3

28 U.S.C. § 2243 ...................................................................................... 2, 18

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–
    136, sec. 12003(b)(2), 134 Stat. 281, 516 (2020) ............................ 1, 4, 5, 9

First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018) ....................... *passim*

5 U.S.C. § 552 ................................................................................................... 8

**Sentencing Guidelines**

U.S.S.G. § 3B1.1 ................................................................................... 4, 7, 16

**Regulations**

28 C.F.R. §§ 523.40–.44 ................................................................................... 7

28 C.F.R. § 523.42 ............................................................................................ 5

28 C.F.R. § 523.42(b) .................................................................................... 7, 9

28 C.F.R. § 523.42(c) .................................................................................... 9, 10

28 C.F.R. § 523.44(d)(3) ................................................................................ 10

28 C.F.R. § 542.13–.19 .................................................................................. 11

28 C.F.R. § 542.18 .......................................................................................... 11

87 Fed. Reg. 2705 ............................................................................................ 7

iv

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Other Authorities**

Bureau of Prisons, *About our Agency*,
    https://www.bop.gov/about/agency/leadership.jsp ........................................................... 2

Bureau of Prisons, *First Step Act Approved Programs Guide* (Sept. 2023) ................. 14

Bureau of Prisons, Program Statement 5400.01 .................................................... 9

Bureau of Prisons, *Cut Points Used for PATTERN* v. 1.3 ...................................... 8

Bureau of Prisons, *PATTERN Risk Assessment* .................................................. 8

Bureau of Prisons, *RRM Long Beach* ................................................................. 2

U.S. Dep't of Justice, Management Advisory Memo., *Office of the
    Inspector General, Impact of the Failure to Conduct Formal Policy
    Negotiations on the Federal Bureau of Prisons Implementation of the
    FIRST STEP Act* (Nov. 15, 2021) ................................................................ 12

U.S. Dep't of Justice, Office of the Attorney General, *The First Step Act of
    2018: Risk and Needs Assessment System* (July 19, 2019) ......................... 9

Memorandum for Director of Bureau of Prisons, Attorney General of the
    United States, *Prioritization of Home Confinement as Appropriate in
    Response to COVID-19 Pandemic* (Mar. 26, 2020) ..................................... 5

U.S. Dep't of Justice, Office of the Attorney General, *First Step Act
    Annual Report* (Apr. 2023) .......................................................................... 8

U.S. Dep't of Justice, Office of Justice Programs, *2020 Review and
    Revalidation of the First Step Act Risk Assessment Tool*, at 16 (Jan.
    2021) ............................................................................................................ 8

Walter Pavlo, *Bureau of Prisons Failure to Communicate First Step Act*,
    Forbes (Oct. 15, 2022, 9:55 AM) ................................................................ 12

**U.S. Constitution**

U.S. Const. art. I, § 9, cl. 2 ................................................................................. 3

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

## I. INTRODUCTION

In 2016, Leon Abel Gonzalez was sentenced to 120 months' imprisonment and five years' supervised release for his conviction on one count of conspiracy to manufacture/distribute/dispense methamphetamine (21 U.S.C. §§ 841(a)(1); 841(b)(1)(B)(viii); 846). In November 2020, Mr. Gonzalez was released to BOP-supervised home confinement under the Coronavirus Aid, Relief, and Economic Security Act (Pub. L. No. 116–136, sec. 12003(b)(2), 134 Stat. 281, 516 (2020)) (the "CARES Act") on account of his vulnerability to COVID-19, satisfactory conduct during incarceration, and a finding by BOP staff to be not be a danger to the public. His BOP release date remains September 26, 2024. This release date, however, does not consider the earned time credits ("ETCs") that he was (and remains) eligible for under the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018) ("FSA") because, despite several requests, the BOP has repeatedly refused to consider his eligibility under the current scoring system applicable to Mr. Gonzalez. Accounting for this error, Mr. Gonzalez's release date is properly calculated as September 26, 2023. Mr. Gonzalez has therefore overserved his sentence and is entitled to credit for that overservice toward his term of supervised release. However, despite Mr. Gonzalez's several efforts to grieve this matter with the BOP, the BOP has declined to take any action.

Despite this inaction, Mr. Gonzalez has been working tirelessly to overcome his past mistakes and make substantial progress in his life and rehabilitation. Since his release, he has earned professional licenses and undertaken substantial vocational coursework, but has not been able to obtain consistent employment due to his ankle monitor. Similarly, Mr. Gonzalez has a substantial network of family members throughout the Southern California area ready and willing to support him, including his adult son, two daughters, and baby grandson. But he has been unable to visit with them as often as he would like due to his home confinement. In other words, every day that

1

Mr. Gonzalez remains unlawfully under home confinement is another day in which his successful reentry is impeded. Such an outcome is not consonant with any just or meaningful sentencing purpose.

For these reasons and the reasons that follow, Mr. Gonzalez respectfully petitions this Court pursuant to 28 U.S.C. § 2241. He requests that this Court order the Respondents to calculate his ETCs and credit the unused ETCs to his five-year term of supervised release.

## II. JURISDICTION

### A. Parties

Petitioner Leon Abel Gonzalez, a resident of Los Angeles, California, is serving a 120-month sentence for a drug trafficking offense for a judgment issued in 2:14-cr-00684-CAS-33 on September 26, 2016. Dkt. 941.

Respondent Juan Herrera is the Residential Reentry Manager for the Long Beach Residential Reentry Management field office at the Bureau of Prisons, the field office that services defendants serving federal sentences outside of a BOP institution within the Central District of California. *See* Bureau of Prisons, *RRM Long Beach*, https://www.bop.gov/locations/ccm/clb/. Respondent Herrera is ultimately responsible for overseeing Mr. Gonzalez's present home confinement. He is listed in his official capacity.

Respondent Collette Peters is the Director of the federal Bureau of Prisons. Bureau of Prisons, *About our Agency*, https://www.bop.gov/about/agency/leadership.jsp. Ms. Peters has ultimate authority over the aware of First Step Act ETCs and the release of individuals in BOP custody. She is listed in her official capacity.

Both Respondents are properly before this Court, as a writ of habeas corpus must "be directed to the person having custody of the person detained." 28 U.S.C. § 2243. If a petitioner is on supervised release or parole, the "petitioner may substitute whatever . . . governing body is responsible for setting the conditions of supervised release and

2

enforcing them if the petitioner violates those conditions." *Miller v. Sangiacomo*, No. 10-CV-169 (RJA), 2010 WL 3749065, at *3 (W.D.N.Y. Sept. 30, 2010) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)); *see also Lallave v. Martinez*, No. 22-CV-4136 (NGG), 2022 WL 7578794, at *5 (E.D.N.Y. Oct. 13, 2022) (finding RRM manager the proper Respondent in a case challenge ETCs of a person on home confinement). Respondents Herrera and Peters in their official capacities qualify as the necessary governing bodies.

**B. Jurisdiction and Venue**

This Court has jurisdiction pursuant to Article I, § 9, cl. 2 of the U.S. Constitution and Title 28, U.S. Code § 1331 (federal question), § 1346 (US defendant), § 1651 (writs), § 2201–2202 (remedies), and § 2241 (power to grant writ). When an incarcerated person alleges he has been unlawfully deprived of good-time credits, the relief he seeks is immediate or speedier release from imprisonment and "his sole federal remedy is a writ of habeas corpus." *Young v. Kenny*, 907 F.2d 874, 875-877 (9th Cir. 1989) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). This petition is properly filed in the district court which has jurisdiction over Mr. Gonzalez's custodian at the time of filing. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980).

Regarding venue, a habeas petition must be filed in the "district of confinement" according to 28 U.S.C. § 2241(a). *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("A petition filed under 28 U.S.C. § 2241 that challenges 'present physical confinement' must be brought in the district of confinement."). The Supreme Court has also directed courts to consider: (1) where all the material events took place; (2) where records and witnesses pertaining to petitioner's claim are likely to be found; and (3) the relative convenience of the forum for the parties. *See Braden v. 30th Judicial Circuit County of Ky.*, 410 U.S. 484, 493–94 (1973).

Mr. Gonzalez is serving his sentence in the Los Angeles area within the Central District of California. Jurisdiction and venue within the Central District of California is therefore proper under 28 U.S.C. § 2241.

## III. BACKGROUND AND FACTUAL ALLEGATIONS

**A.    Mr. Gonzalez's Conviction and Sentence**

Mr. Gonzalez was one of 38 defendants charged in a drug conspiracy case. Pursuant to a written plea agreement (Dkt. 793)[1], on May 9, 2016, Mr. Gonzalez entered a guilty plea to one count of conspiracy to manufacture/distribute/dispense methamphetamine, under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii), as charged in Count Four of the indictment. Count Four detailed several methamphetamine transactions that Mr. Gonzalez participated in with one of his co-defendants. Plea Agreement, Dkt. 793.

According to the Presentence Report (Dkt. 844), Mr. Gonzalez was ***not*** a supervisor, leader, manager, or organizer of the charged drug distribution under U.S.S.G. § 3B1.1.

On September 26, 2016, Mr. Gonzalez was sentenced to the mandatory minimum 120-month sentence, with a five-year term of supervised release. The Court did not make any findings on the record about an aggravating role in the offense. Judgment & Commitment Order, Dkt. 941; Sentencing Transcript, Dkt. 2307.

Mr. Gonzalez did not appeal his conviction. He has been in federal custody on these charges since January 13, 2015. Report Commencing Criminal Action, Dkt. 362.

**B.    Incarceration and Release on CARES Act Home Confinement**

From October 12, 2016 through July 24, 2019, Mr. Gonzalez was incarcerated at two medium-security BOP facilities in Victorville, California, before being transferred to low-security FCI Lompoc, where he remained for the duration of his custodial sentence. *See* Progress Report dated September 8, 2020 at 2, Ex. A. At Victorville, Mr. Gonzalez completed his GED and several other educational and vocational courses. *See* Inmate Education Data dated March 8, 2023, Ex. B.

---

[1] All references to docket entries herein refer to filings in Mr. Gonzalez's criminal case, Dkt. No. CR-14-684-33.

4

During the COVID-19 pandemic, Mr. Gonzalez was one of several incarcerated individuals released pursuant to the CARES Act to BOP-supervised home confinement. Declaration of Proposed Counsel ("Haney Decl.") ¶ 2. His release to home confinement took place on or around November 19, 2020, after having been determined to be eligible based upon his vulnerability to COVID-19, satisfactory conduct during incarceration, and a finding by BOP staff to be not be a danger to the public. Haney Decl. ¶ 2; *see* Memorandum for Director of Bureau of Prisons, Attorney General of the United States, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020), available at: https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (describing relevant criteria for CARES Act release).

Mr. Gonzalez has remained on home confinement in good standing for nearly three years. Haney Decl. ¶ 3. He currently resides with his sister and mother in Montebello, California and reports to his halfway house in El Monte, California twice a week. Haney Decl. ¶ 3.

## C.    The First Step Act Earned-Time-Credit Program

In December 2018, while Mr. Gonzalez was serving his sentence, Congress passed the First Step Act ("FSA"). Pub. L. No. 115-391, 132 Stat. 5194 (2018). The FSA provided that eligible individuals who successfully participated in certain evidence-based recidivism-reduction programs or productive activities would earn credits to be applied toward their prerelease custody. 18 U.S.C. § 3632(d)(4)(C). The Bureau of Prisons implemented the Earned-Time-Credit ("ETC") program as their answer to the legislation at 28 C.F.R. § 523.42.

Under the Act, individuals "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). Additionally, people "shall earn an additional 5 days of time credits for every 30 days" of successful participation if the BOP has assessed them to be a low or minimum recidivism risk over two consecutive

5

assessments and has not increased their risk of recidivism. *Id*. § 3632(d)(4)(A)(ii). ETCs are distinct from the pre-FSA "good time credits," which are credits that reduce an inmate's actual time in BOP custody for behavior that follows institutional regulations. *See* 18 U.S.C. § 3624(b).

The FSA requires the BOP to assign each person in its custody to evidence-based recidivism-reduction programs or productive activities. *Id*. § 3632(a)(3), (5).

The FSA also requires the BOP to apply ETCs and to transfer "eligible prisoners" into prerelease custody (residential reentry center or home confinement) or supervised release. *Id*. § 3632(d)(4)(C); *see id*. § 3624(g)(2) (defining prerelease custody as including residential reentry or home confinement). If a sentence includes a term of supervised release, then the BOP may apply time credits to transfer an individual to begin supervised release up to 12 months early. *Id*. § 3624(g)(3).

To be eligible for transfer, the individual must have (1) been assessed as a low or minimum recidivism risk at their last assessment; (2) demonstrated a reduced risk of recidivism or maintained a minimum or low recidivism risk score; (3) earned time credits in an amount equal to the remainder of the imposed term of imprisonment; and (4) have had the remainder of the term of imprisonment computed. *Id*. § 3624(g)(1).

Further, people are not eligible to earn ETCs if they have certain convictions and/or if the sentencing court makes specific determinations, as enumerated in the statute. *See* 18 U.S.C. § 3632(d)(4)(D). For instance, as to the single count of which Mr. Gonzalez was convicted (21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii)), two relevant subdivisions apply to exclude offenders from eligibility.

First, an offender serving a sentence relating to manufacturing or distributing a controlled substance under 21 U.S.C. § 841(a) is not eligible to earn credits where death or serious bodily injury resulted from the use of the substance. 18 U.S.C. § 3632(d)(4)(D)(lviii). Second, an offender serving a sentence relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, or knowingly importing or exporting, a mixture of substance containing a

detectable amount of methamphetamine, its salts, isomers, or salts of its isomers (21 U.S.C. § 841(b)(1)(B)(viii)) is likewise ineligible to earn credits if a sentencing court has determined they were an organizer, leader, manager, or supervisor of others in the offense under U.S.S.G. § 3B1.1. 18 U.S.C. § 3632(d)(4)(D)(lxv).

On January 19, 2022, the final rule implementing the FSA's time credits program took effect. *See* FSA Time Credits, 87 Fed. Reg. 2705 (Jan. 19, 2022); 28 C.F.R. §§ 523.40–.44. The rule is explicit that people on home confinement, such as Mr. Gonzalez, are eligible to earn time credits. *See* 87 Fed. Reg. 2705, 2712. The rule further provides that the start date for earning ETCs is the effective date of the FSA (December 21, 2018) or the date a sentence commences, if later. *See* 87 Fed. Reg. 2705, 2708; 28 C.F.R. § 523.42(b).

On January 12, 2022, the BOP established interim procedures to calculate and award ETCs. *See Brodie v. Pliler*, 1:22-cv-03821-LGS (S.D.N.Y. Sept. 23, 2022) (Declaration of Susan Giddings, Chief of the Unit Management Section in the BOP's Central Office, Dkt. 13); *Stewart v. Snider*, No. 1:22-cv-00294-MHH-JHE, 2022 WL 2032305, at *6 (N.D. Ala. May 10, 2022), *report and recommendation adopted*, 2022 WL 2019965 (N.D. Ala. June 6, 2022) (citing Declaration of Susan Giddings, Chief of the Unit Management Section in the BOP's Central Office, Dkt. 11–14).

Under these interim procedures, the BOP does not perform an actual analysis of the programming in which a particular person participated. Instead, it merely "calculat[es] credit based on the total number of days in the inmate's designated facility divided by 30 days (one-month average) and multiplied by 15 (the allowable credit for inmates with Low or Minimum risk levels)." *Stewart*, 2022 WL 2032305, at *6. The only exception is where someone does "not earn time credit for days in custody if they refuse[d] to participate in certain programs or [were] placed in the Special Housing Unit." *Id.* In short, under the interim procedures, the BOP has counted the entire period someone has been in BOP custody following the effective date of the FSA or the start

of their sentence (whichever was later)—irrespective of their engagement in programs and activities.

Mr. Gonzalez is subject to this rule.

**D.    PATTERN Score**

Another product of the FSA, PATTERN is the "Prisoner Assessment Tool Targeting Estimated Risk and Needs." BOP applies PATTERN to determine an incarcerated individual's predicted recidivism risk score. This score relies upon items like the age of the inmate, criminal history, disciplinary history, and programming status. *See* Bureau of Prisons, *PATTERN Risk Assessment,* available at: https://www.bop.gov/inmates/fsa/pattern.jsp.

The newest version of the PATTERN scoring system, implemented in May 2022, is version 1.3. *Id.*; see U.S. Dep't of Justice, Office of the Attorney General, *First Step Act Annual Report*, at 16 (Apr. 2023), available at https://www.ojp.gov/first-step-act-annual-report-april-2023 (last visited Sept. 19, 2023). This version utilizes a "cut points" scoring system, in which raw scoring numbers in various risk categorizes place males and females into four categories (High, Medium, Low, and Minimum). *Id.* To identify the proper risk category, an inmate's raw score is placed in a risk category, with "low" for men being between a score of 6-39. *See* Bureau of Prisons, *Cut Points Used for PATTERN* v. 1.3, available at: https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3.

According to BOP documentation received by a Freedom of Information Act (5 U.S.C. § 552) request, an undated report calculated Mr. Gonzalez's score at 32 (FSA Assessment, Ex. C), thereby classifying Gonzalez as a "low" risk offender and rendering him eligible under the FSA to earn all possible ETCs.[2] Adding to the

---

[2] According to the form, Gonzalez's score equates with a "medium." *Id.* However, this category was determined using PATTERN v. 1.2, under which a 32 translates to a "medium." *Id.* (noting, at header of form, that "PATTERN 01.02.01" is being applied); *see* U.S. Dep't of Justice, Office of Justice Programs, 2020 Review and Revalidation of the First Step Act Risk Assessment Tool, at 16 (Jan. 2021, available at https://www.ojp.gov/pdffiles1/nij/256084.pdf (last visited Sept. 19, 2023).

8

bureaucratic confusion surrounding Mr. Gonzalez's standing to earn and use FSA Credits, BOP records elsewhere list him as "eligible" to earn FSA credits. *See* Computation Sheet March 8, 2023, Ex. D.[3]

### E.    Mr. Gonzalez is Eligible for over 560 Earned Time Credits and is Overserving His Sentence.

Under the FSA and the BOP's procedures outlined above, Mr. Gonzalez has been eligible to earn 15 days of ETCs for every 30 days he has served because he has maintained a low recidivism risk score. *See* 18 U.S.C. § 3632(d)(4)(A)(ii); 28 C.F.R. § 523.42(c).

According to the Amended Rule and Regulations published by the Bureau of Prisons, eligible inmates are eligible for time credits starting on December 21, 2018, and those credits are retroactive for sentences not satisfied as of July 19, 2019. 28 C.F.R. § 523.42(b); *see* U.S. Dep't of Justice, Office of the Attorney General, *The First Step Act of 2018: Risk and Needs Assessment System* (July 19, 2019), available at https://www.ojp.gov/First-Step-Act-of-2018-Risk-and-Needs-Assessment-System (last visited Sep. 20, 2023). Mr. Gonzalez's term of imprisonment began on September 26, 2016 (Ex. D). He has therefore been earning FSA credits for over 1,700 days and

---

[3] Although my office submitted a Freedom of Information Request requesting "[a]ny BOP computation or programming reports assessing or calculating the eligibility, earning status, calculation, availability, or redemption of time credits pursuant to the First Step Act" as well as "[a]ny BOP report reflecting Mr. Gonzalez's Risk and Needs Assessment or participation in Evidence Based Recidivism Reduction Programming[,]" my office only received the undated report discussed above in response.  FOIA Request dated Mar. 1, 2023, Ex. E. Thus, it reasonably appears that Mr. Gonzalez has not been reassessed since the undated assessment under PATTERN v. 1.2, despite the fact that the BOP is obligated to reassess individuals released to home confinement *at least* every 180 days, if not monthly. *See* Bureau of Prisons, Program Statement 5400.01, section 6, available at https://www.bop.gov/policy/progstat/5400.01.pdf (last visited Sep. 19, 2023) (inmates' FSA eligibility reassessed at 180-day interviews); Office of the Attorney General; Home Confinement Under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 88 Fed, Reg, 19830-01 (Apr. 4, 2023) (to be codified at 28 C.F.R. pt. 0) ("An inmate placed in home confinement is not considered released from Bureau custody. Rather, the inmate continues serving their sentence at home in their community."); *see also* Bureau of Prisons, Program Statement 5410.01 CN-2, available at https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last visited Sep. 20, 2023) (inmates in FSA prerelease placement must be reassessed "on a monthly basis").

counting (*i.e.*, from December 21, 2019 to the present). 28 C.F.R. § 523.42(c) states inmates with a PATTERN score of "High" or "Medium" earn FSA credits at ten days for every 30 days of successful participation in programming and inmates with "Low" or "Minimum" scores earn FSA credits at fifteen days for every 30 days of successful participation. 28 C.F.R. § 523.42(c). Even at the lower earning category of 10 days for every 30, Mr. Gonzalez would have earned over 560 days of FSA credits at this point in his incarceration, well over the maximum full benefit of 12 months of transfer to supervised release under 28 C.F.R. § 523.44(d)(3).

As such, Mr. Gonzalez's release date, including the 12 months of pre-release custody he earned, should be updated from September 26, 2024 to September 26, 2023. And, as Mr. Gonzalez is already in prerelease custody via home confinement and has not benefited from application of his FSA time credits, the BOP is required to apply his time credits towards his transfer to supervised release. *See* 18 U.S.C. § 3632(d)(4); *see also Stewart*, 2022 WL 2019965, at *1 (granting petition for writ of habeas corpus and directing BOP to calculate and award earned credit). Further, Mr. Gonzalez meets the criteria for immediate release to supervised release because (1) based on information and belief he has maintained a low recidivism risk score; (2) he has earned time credits in an amount equal to the remainder of the imposed term of imprisonment (his release date is September 26, 2024 and he has at least 560 ETCs); (3) his sentence includes a term of supervised release; and (4) he has less than 12 months left in BOP custody. *See* 18 U.S.C. § 3624(g)(1), (3).

## F.   Mr. Gonzalez Has Exhausted His Administrative Remedies.

Mr. Gonzalez has repeatedly tried to resolve this discrepancy with the BOP. His case managers since his release to home confinement have repeatedly informed Mr. Gonzalez that they do not know anything about ETC or his eligibility for them. He has requested documentation and records pertaining to his ETC and sentence computation verbally many times and did not receive a response. On April 14, 2022, Mr. Gonzalez mailed and emailed a letter to Residential Reentry Manager Juan Herrera requesting

more information about his FSA (ETC) credits. Letter and Email, Exs. F-G. Mr. Gonzalez did not receive a response.

Further attempting to resolve the matter informally, on July 3, 2023, Deputy Federal Public Defender Margaret Farrand, the Chief of the Appeals Unit in my office, contacted Mr. Herrera and BOP supervising attorney Eliezer Ben-Shmuel via e-mail requesting the BOP review and adjust Mr. Gonzalez's release date to reflect any ETCs. On July 24, 2023, Mr. Ben-Shmuel responded by email that the BOP had no record of an administrative remedy request from Mr. Gonzalez on this subject, and that he must make such a request before proceeding to court. Ex. H. According to Mr. Ben-Shmuel, the BOP runs FSA credit reports monthly, and the next report would be run the first weekend in August. *Id.* Mr. Ben-Shmuel instructed counsel to have Mr. Gonzalez address any credit issues with his counselor and via the administrative remedy process. *Id.*

Therefore, beginning on or around July 25, 2023, and concluding on October 27, 2023, Mr. Gonzalez sent the relevant BP-9 (request for administrative remedy), BP-10 (regional administrative remedy appeal), and BP-11 (central office administrative remedy appeal) forms to the relevant parties by U.S. Certified Mail and/or UPS. Mr. Gonzalez received no response. Mr. Gonzalez has therefore fully satisfied the BOP grievance process (28 C.F.R. parts 542.13–.19), even though he has not received a response to any of his attempts to avail himself of this process, 28 C.F.R. part 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.").

Alternatively, to the extent Mr. Gonzalez is deemed to have failed to adequately avail himself of the grievance process in any respect, further pursuing such a process-- as Mr. Gonzalez continues to overserve his sentence--would be futile under the circumstances. The absence of any meaningful response to Mr. Gonzalez's extensive efforts to exhaust demonstrates as much.

11

Indeed, as a recent Department of Justice report reflects, in 2021, more than 60,000 people faced delays or inaccurate ETC calculations. U.S. Dep't of Justice, Management Advisory Memo., *Office of the Inspector General, Impact of the Failure to Conduct Formal Policy Negotiations on the Federal Bureau of Prisons Implementation of the FIRST STEP Act* (Nov. 15, 2021), at 6, available at https://oig.justice.gov/sites/default/files/reports/22-007.pdf (last accessed Oct. 2, 2023). These shortcomings have included the BOP's refusal to inform people of their ETC calculations, people being released early and then called back because of an ETC miscalculation, people receiving far fewer ETCs than they anticipated, and people failing to or incorrectly completing the "needs assessment survey," erroneously opting them out. Walter Pavlo, *Bureau of Prisons Failure to Communicate First Step Act*, Forbes (Oct. 15, 2022, 9:55 AM), https://www.forbes.com/sites/walterpavlo/2022/10/15/bureau-of-prisons-failure-to-communicate-first-step-act/?sh=648e71c224fc (last accessed Oct. 2, 2023).

Where, as here, the administrative process has so plainly broken down, petitioners in Mr. Gonzalez's situation have no other choice but to seek § 2241 relief. District courts have recognized as much, not hesitating to order the BOP to calculate and apply ETCs consistent with their regulations. *See Cazares v. Hendrix*, 575 F. Supp. 3d 1289 (D. Or. 2021) (recommending the Warden "review each of the consolidated petitioner's case files and calculate and award applicable Earned Time credits without delay"); *Dyer v. Fulgam*, No. 1:21-CV-299, 2022 WL 1598249 (E.D. Tenn. May 20, 2022); *Lallave v. Martinez*, No. 22-CV-4136, 2022 WL 7578794 (E.D.N.Y. Oct. 13, 2022) (ordering the BOP to calculate petitioner's ETCs and apply the remaining credits to reduce her time on supervised release).

12

# IV. ARGUMENT

A challenge to the execution of a federal sentence is properly raised under 28 U.S.C. § 2241. *Pinson v. Carvajal*, 69 F.4th 1059, 1066 (9th Cir. 2023). This type of challenge includes an argument that a person has been unlawfully denied credit towards their sentence. *See Jones v. Hendrix*, No. 21-857, -- S. Ct. --, 2023 WL 4110233 (June 22, 2023) (providing "examples" of claims properly brought under § 2241 as including "being detained in a place or manner not authorized by the sentence," or being "unlawfully been denied parole or good-time credits"); *see also Robertson v. Butler*, No. 6:14-136-KKC, 2014 WL 7177936, at *2 (E.D. Ky. Dec. 16, 2014) (noting a § 2241 petition is proper when someone is challenging the "BOP's calculation of sentence credits or other issues affecting the length of [a] sentence," such as "parole eligibility").

## A. Mr. Gonzalez is Eligible to Earn and Redeem over 560 days' ETCs.

Mr. Gonzalez is eligible for at least 560 days of ETC. As described above, under the BOP's interim procedures applicable to Mr. Gonzalez, people presumptively receive ETCs. In other words, credit calculations are not based on how many programs a particular person completed but on the time period that they spent in the so-called "earning status." For Mr. Gonzalez, that is every day since December 21, 2018.

But even if Mr. Gonzalez does not get the benefit of that presumption, based on information and belief, he has actually earned the ETCs. As noted, the FSA allows for ETCs when a person completes "evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A). It is not entirely clear which programs satisfy the requirements to earn ETCs. However, in September 2023, the BOP published a revised version of the "First Step Act Approved Programs Guide" which describes that ETCs may be earned through participation in both structured group activities (listed in the Guide), and unstructured activities not listed in the guide when recommended to address the person's needs. Bureau of Prisons, *First Step Act*

13

*Approved Programs Guide* (Sept. 2023) at 2,

https://www.bop.gov/inmates/fsa/docs/fsa_program_guide_202010.pdf.

Mr. Gonzalez has been fully compliant with the terms of his programming suggestions. (Ex. C, FSA Time Assessment, Ex. A, Progress Report). During the pandemic, programming was limited but he never refused programming suggestions or otherwise took any action that would deem him ineligible to earn and redeem FSA credits. Indeed, the limited data provided by BOP makes clear that, as of Mr. Gonzalez's last FSA assessment in April 2021, he had completed at least three programs and was not in refusal status. (Ex. C, FSA Time Assessment) This included "numerous recommended educational programs" amounting to at least 268 days of programming (Ex. A, Progress Report; *see* Ex. B, Inmate Education Data). Without further detail about those programs, it is difficult to assess the precise amount of ETCs that Mr. Gonzalez would qualify for under the formulas. However, it reasonably appears he would qualify for at least 89 days of ETCs. *See* 18 U.S.C. § 3632(d)(4)(A)(i). Additionally, Mr. Gonzalez is eligible for an additional 45 days of ETCs under § 3632(d)(4)(A)(ii) because, based on information and belief, his risk of recidivism has not increased over two consecutive assessments.

No matter how many ETCs Mr. Gonzalez has earned, however, they must be applied toward his sentence. And now that he has earned more ETCs than time remaining on his term of imprisonment, those credits must be applied to reduce his term of supervised release. *See* 18 U.S.C. § 3632(d)(4)(C); *Dyer v. Fulgam*, No. 1:21-CV-299-CLC-CHS, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022) (applying "the unused FSA time credits toward Petitioner's term of supervised release" noting that the "FSA explicitly provides for eligible inmates to earn time credit for activities that promote rehabilitative functioning, and Petitioner is entitled to receive the benefit of his participation in those activities").

**B.    Mr. Gonzalez is Not Disqualified Based on His Conviction or Conduct**

In addition to properly exhausting and earning ETCs through time and programming, Mr. Gonzalez is also not barred from ETCs based on his crime of conviction or offense conduct. Regardless of whether someone participates in qualifying programs, the FSA proscribes certain people from earning ETCs if they are convicted under certain statutes or if the sentencing court makes certain determinations. 18 U.S.C. § 3632(d)(4)(D). As noted above, there are two eligibility-related provisions that are applicable to § 841(b) convictions: 18 U.S.C. §§ 3632(d)(4)(D)(lviii) and (lxv).

**1.    Mr. Gonzalez is not ineligible under 18 U.S.C. § 3632(d)(4)(D)(lviii) because he was not convicted of an offense for which death or serious bodily injury resulted from the controlled substance.**

The FSA precludes someone from receiving ETCs if they are "serving a sentence for a conviction" related to distributing a controlled substance under § 841(b)(1) "for which death or serious bodily injury resulted from the use of such substance." 18 U.S.C. § 3632(d)(4)(D)(lviii) (emphasis added). Because Mr. Gonzalez was not convicted of such an offense, this provision is not a bar.

According to the Presentence Report, Mr. Gonzalez was charged in this offense for distributing a total of 357 grams of methamphetamine to a confidential informant on three occasions. Presentence Report, Dkt. 844 at ¶¶ 9-12. He did not plead guilty under § 841(b)(1)'s "death or serious bodily injury" provision. Nor were any victim related adjustments made to the calculation of his offense level. *Id.* at ¶ 20.

Therefore, Mr. Gonzalez is not statutorily barred from earning ETCs based on his crime of conviction under § 3632(d)(4)(D)(lviii).

1

2. **Mr. Gonzalez is also not made ineligible under 18 U.S.C. §
   3632(d)(4)(D)(lxv) because this Court did not apply the two-level
   enhancement under U.S.S.G. § 3B1.1.**

The FSA further provides that someone convicted of violating 21 U.S.C. § 841(b) is ineligible for ETCs if the court "finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission." 18 U.S.C. § 3632(d)(4)(D)(lxv).

Here, the probation officer did not find that Mr. Gonzalez was a supervisor, leader, manager, or organizer of the charged drug distribution under U.S.S.G. § 3B1.1. Presentence Report, Dkt. 844. Similarly, such a finding was not made by the Court or raised during sentencing. Sentencing Transcript, Dkt. 2307. Accordingly, because Mr. Gonzalez did not receive an enhancement under U.S.S.G. § 3B1.1, he cannot be disqualified from ETCs on the basis of being an "organizer, leader, manager, or supervisor."

C. **Mr. Gonzalez is Not At Risk of Re-Offending and Has Demonstrated
   Strong Community Ties Warranting the Soonest Possible Release from
   Restrictive Custody**

Since his release nearly three years ago, Mr. Gonzalez has made substantial positive changes in his life, all despite having to navigate the restrictive limitations of BOP-supervised home confinement. His accomplishments are extensive, and he has aspirations to do even more.

Mr. Gonzalez has pursued numerous educational offerings to make himself more employable.  He gained a professional barbering license in hopes of obtaining a job in a barbershop his friend operates near his home. Haney Decl. ¶ 5.  He recently completed an electrician course and began a machine shop course locally. Haney Decl. ¶ 5.  He is seeking approval to start a welding course next month, and hopes to also complete an extended electrician training program. Haney Decl. ¶ 5.

16

Nonetheless, Mr. Gonzalez has struggled to gain full and steady employment due to the ankle monitor he is required to wear while under home confinement. Haney Decl. ¶ 4.  For example, he obtained a trucking permit, valid for four months, hoping he could obtain a trucking job. Haney Decl. ¶ 4. However, Mr. Gonzalez's case manager informed Mr. Gonzalez that he could not accept a trucking job because he was not permitted to travel outside a 100-mile radius while wearing his ankle monitor.  Haney Decl. ¶ 4. So, Mr. Gonzalez had to let the permit expire. Haney Decl. ¶ 4.

Mr. Gonzalez has tried to make the best of the situation and utilize the time available to him to reconnect with family. He has an adult son who lives in Long Beach, and two daughters and two baby grandsons who reside in Victorville, one of whom was born in October. Haney Decl. ¶ 6. Due to home confinement restrictions, Mr. Gonzalez has not been able to visit with his family as often as he would like. Haney Decl. ¶ 6. While he does Facetime calls with them nearly every evening, he plans to visit more frequently and hopes to be able to earn more money to support his children and grandchildren. Haney Decl. ¶ 6.

In reflecting on some of his criminal history, Mr. Gonzalez acknowledges that he has struggled with addiction in the past. Haney Decl. ¶ 7. The past eight years of sobriety have given Mr. Gonzalez new clarity and focus. Haney Decl. ¶ 7. He no longer associates with the group of people who got him into trouble and remains focused on improving his life and further strengthening his family relationships. Haney Decl. ¶ 7.

In short, the ongoing, and illegal, term of home confinement that Mr. Gonzalez continues to serve constitutes a substantial impediment to his ongoing progress. Though the BOP has stood idly by as this has transpired, this Court need not chart the same course.  It can, and should, intervene to ensure Mr. Gonzalez receives the fair and timely computations to which he is legally entitled.

## V. CONCLUSION

For the reasons set forth above, the BOP failed to calculate and properly apply Mr. Gonzalez's ETCs, despite his unquestionable eligibility. Mr. Gonzalez respectfully

17

asks the Court to order BOP to calculate and apply ETCs to his sentence, including reducing his term of supervised release by the quantity of remaining unused ETCs, without further delay. And, because Mr. Gonzalez is already overserving his sentence, he respectfully requests that this Court consider and adjudicate his petition on an expedited basis. 28 U.S.C. § 2243; *Yong v. Immigration & Naturalization Serv.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (habeas statute requires "'special, preferential consideration to insure expeditious hearing and determination'" (citation omitted)).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  December 18, 2023          By  */s/ Hunter Haney*

HUNTER HANEY
Deputy Federal Public Defender
Proposed Attorneys for Leon Abel Gonzalez